Daniel, J.
 

 The Legislature, in its session of 1840-41, passed an act that no will in writing,
 
 made
 
 after the 4th day of July, 1841, whereby personal estate is bequeathed, shall be sufficient to convey or give the same, unless such will be executed with the same formalities, as are required in the execution of wills of real estate. William Salter had pub-
 
 *495
 
 lislied the paper-writing, offered in evidence by the plaintiffs, as his will on the 6th day of July 1838, and he died in the fall of the year 1843. The said paper-writing has all the formalities of a will to pass land, except that it is subscribed only by one witness. It is true, that, a will to be good, must be made according to the form prescribed by the law, at the time of the death of the testator, and not from those at the time of its execution. And the case of
 
 JEleodc’s will,
 
 cited by the defendant’s counsel (4 McCord, 39,) is an authority for this position. There it appears, that Elcock made his will of personal property, in 1823,• which was attested by only two-witnesses, according to the provisions of the law in force at that time. By the statute of 1824, (of So. Ca.) it is required, that wills of personal property shall be attested by three witnesses, which repeals the former act. The testator died in 1825, leaving no other will.- It was held, that the will was void,- as not being in conformity to the law of the State, at the death of the testator. But it will be observed, that there is nothing in the South Carolina Statute, that is like unto a- proviso, reservation, or exception, for a will made before a particular
 
 time;
 
 and it, therefore, overrides-every paper-writing in the nature of a will, made before its enactment, which is not in conformity to its provisions, and the testator died after it went into force. But our act of Assembly impliedly excepts all wills in writing that were made before the 4th day of July, 1841. In other words, the law,- relating to such wills as were made before that time, was not to be considered as repealed by the said statute. That brings us to the question, what' did the Legislature mean by the said word (“made,”) as it is used in the statute? The rules of exposition- as to grants and pleadings, to-wit, that the words used are to be taken most strongly against the grantor or pleader, are rules that have no place in the construction of' acts of Parliament, which are not the
 
 words of parties.
 
 The words in the last will of a party are to be most favorably construed, because he is
 
 inops
 
 con-
 
 cilii.
 
 This we cannot say of the Legislature, observed-
 
 *496
 
 Lord Tenterden, 9 Barn, and C.
 
 758.
 
 But the construction of a statute depends upon the apparent intention of the makers ; to be collected either from the particular provision or ^ generaj[ context, and should be construed according to the intention of the makers ;
 
 Dwarris,
 
 688. The Legislature, (in 1840-41,) were about to make a great alteration in the law of this State relative to the disposition by will of personal property ; and they did not intend, that any of the people should be surprised by it ; and therefore, they did not say that the act should go into effect on the 4th day of July, 1841, but they said that no will in writing of personal property,
 
 made after
 
 that time, should be sufficient. Can it reasonably be contended that the Legislature meant (by using the word “
 
 made,")
 
 an instrument then complete, and to take
 
 effect
 
 as a will by the death of the testator ? We think not; because then the present phraseology of the act would have been useless. A simple declaration, that the act should not go into operation before the 4th day of July, 1841, would have much better expressed their meaning. The word £l
 
 made"
 
 we think, was intended to embrace those instruments of writing, which were executed and published as wills, according to the forms and ceremonies of-the law; for when that was done the will was then
 
 made,
 
 although it could not take
 
 effect
 
 until the death of the testator. And, we think, that any instrument of writing, thus made, before the 4th day of July, 1841, although the testator died after that time, was intended by the Legislature to be governed by the former law; or that the former law was not intended to be repealed as to such a will, and was still the law as to the subject matter, at the death of the testator, although that might be after the 4th day of July, 1841. The judgment must be affirmed.
 

 Per Curiam. Judgment affirmed.